IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 96-41188

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROMEO TRINIDAD FLORES, JR.,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

March 5, 1998

Before GARWOOD, DUHÉ and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Romeo Trinidad Flores, Jr. (Flores) appeals the district court's denial of his motion to vacate his sentence under 28 U.S.C. § 2255. We affirm.

**Facts and Proceedings Below**

On August 29, 1991, Flores was convicted following a jury trial of conspiring to possess with intent to distribute in excess of 1,000 kilograms of marihuana in violation of 21 U.S.C. §§ 846,

841(a)(1), and 841(b)(1)(A).[1]  On direct appeal, this Court

reversed Flores' conviction due to the erroneous admission of his

codefendant's grand jury testimony.  *United States v. Flores*, 985

F.2d 770 (5th Cir. 1993).  In his second jury trial, Flores was

again convicted.  In an opinion dated November 3, 1994, we affirmed

the second conviction.  *United States v. Flores*, 40 F.3d 385 (5th

Cir. 1994) (unpublished table decision).

On April 24, 1996, the Anti-terrorism and Effective Death

Penalty Act of 1996 (hereinafter "AEDPA" or "Act") was signed into

law.[2]  Most pertinent to Flores, section 105 of the Act amended 28

U.S.C. § 2255 to include a one-year period of limitations.[3]

---

[1]

A detailed account of the offense and the circumstances surrounding
Flores' arrest and trial can be found in *United States v. Flores*,
985 F.2d 770, 771-74 (5th Cir. 1993).

[2]

Pub.L. No. 104-132, 110 Stat. 1214.

[3]

110 Stat. 1220 (codified at 28 U.S.C. § 2255 (Supp. 1997)).  The
amendment, as codified, reads:

> "A 1-year period of limitation shall apply to a
> motion under this section.  The limitation period shall
> run from the latest of--
>   (1)  the date on which the judgment of conviction becomes
> final;
>   (2)  the date on which the impediment to making a motion
> created by governmental action in violation of the
> Constitution or laws of the United States is removed, if the
> movant was prevented from making such a motion by such
> governmental action;
>   (3)  the date on which the right asserted was initially
> recognized by the Supreme Court, if that right has been newly
> recognized by the Supreme Court and made retroactively

Approximately four months after the enactment of the AEDPA, Flores filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255, asserting numerous errors including ineffective assistance of counsel, outrageous government misconduct, violation of the Jenks Act, a *Brady* violation, and error in the jury instructions.[4]

In response, the government filed a motion to dismiss, or in the alternative, for summary judgment, arguing both that Flores' motion was procedurally barred by the one-year period of limitation contained in section 2255 as amended by AEDPA (but there acknowledging that a Department of Justice "policy letter" construed the Act's limitations period to commence to run on its effective date) and that the allegations in Flores' motion were fatally conclusory and lacked any evidentiary support. The district court granted summary judgment in favor of the government, finding Flores' contentions to be "entirely conjectural and unsupported by anything in the record." Flores filed a timely notice of appeal, and a certificate of appealability (COA) was granted to permit Flores' appeal to this Court.[5]

_____

> applicable to cases on collateral review; or
>   (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

[4]

Flores filed his motion on or about August 19, 1996.

[5]

The COA specifically authorized appeal of two issues. First, "whether a 28 U.S.C. § 2255 motion is time barred when it is filed (1) within one year following the effective date of the Anti-

3

## Discussion

The district court did not address the limitations question, denying the motion on other grounds. However, because we may affirm on any grounds that were urged below, we address as a threshold issue whether Flores' motion is time barred under the limitations period of the amended section 2255.

The applicability of the limitations provision to motions filed after the enactment of the AEDPA but attacking convictions which became final prior thereto is a question of first impression in this Circuit.[6] Those of our sister circuits that have considered the issue[7] have all held that such petitioners must be

---

terrorism and Effective Death Penalty Act of 1996 (AEDPA), i.e., April 24, 1996, but (2) more than one year after the judgment of conviction became final, and (3) the date on which the judgment of conviction became final was either (a) more than one year before the effective date of AEDPA, as is the case with the instant motion, or (b) less than one year before the effective date of AEDPA." Appeal of a second issue, whether the district court adequately stated its reasons for dismissing the motion, was also authorized in the COA.

[6]

*See, e.g., United States v. Shunk*, 113 F.3d 31 (5th Cir. 1997), where we acknowledged the difficulty involved in determining the potential retroactive application of the limitations period, stating that, "[n]eedless to say, it presents important and difficult issues. And, there are obvious and quite forceful arguments against its application." *Id.* at 34. We declined to reach the question in that case, however, because neither side had presented it on appeal. *Id.*

[7]

The AEDPA contains two nearly identical limitations provisions. Section 105(2) amends 28 U.S.C. § 2255, which is the provision in question in this case. A second, virtually identical limitations period is contained in section 101, which amends 28 U.S.C. § 2244

4

accorded a reasonable time after the enactment of the AEDPA within which to pursue collateral relief.[8]  Perhaps the seminal case that came to this conclusion was *Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996), which determined that prisoners' reliance interests dictated that no collateral attack filed within one year of the AEDPA's enactment would be dismissed as time barred under the AEDPA limitation periods.  *Id.* at 866.  The Supreme Court granted

_____

(relating to attacks on state court convictions or sentences) to impose a one-year period of limitations on petitions made under that section.

   Because of the similarity of the actions under sections 2254 and 2255, they have traditionally been read *in pari materia* where the context does not indicate that would be improper. *See, e.g.*, *McFarland v. Scott*, 114 S.Ct. 2568, 2573 (1994) (noting that the "terms 'post conviction' and 'habeas corpus' also are used interchangeably in legal parlance to refer to proceedings under § 2254 and § 2255" and accordingly statutes providing for post-conviction relief should, unless context mandates otherwise, be read *in pari materia*.)  Thus, although the application of the limitations period in the amended section 2255 is in question in the case *sub judice*, in our discussion below we refer to cases involving section 2254 as relevant to our analysis, and we similarly do not adhere to the linguistic "motion/petition" distinction in referring to the filing that a prisoner makes to begin proceedings under sections 2255 and 2254 (technically, a pleading filed under section 2255 is referred to as a "motion," while one filed under section 2254 is a "petition").

[8]

*See, e.g., United States v. Simmonds*, 111 F.3d 737, 745-46 (10th Cir. 1997) ("[W]e hold application of the new time period to [petitioner's] § 2255 motion without first affording him a reasonable time to bring his claim impermissibly retroactive."); *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir. 1996), *rev'd on other grounds*, 117 S.Ct. 2059 (1997) (holding that habeas petitioners have a "reasonable post-amendment time to get litigation underway"); *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1287 (9th Cir. 1997) (same with respect to section 2254 petitions); *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir. 1997) (same).

5

*certiorari* in *Lindh* and reversed on a separate issue.[9] *Lindh v. Murphy*, 117 S.Ct. 2059 (1997). Although the Court did not specifically address the limitation provisions, or the Seventh Circuit's interpretation of it in *Lindh*, it did clarify the appropriate construction and temporal application of Title I of the Act, which contains these provisions. Thus, although *Lindh* does not provide an answer to the question before us, it does help to define the appropriate inquiry.

It is axiomatic that the touchstone of statutory construction is legislative intent. Unfortunately, as is often the case, Congress's intent as to the appropriate temporal application of the limitation provisions is neither apparent on the face of the statute nor otherwise unambiguously expressed. As the Supreme Court noted in *Lindh*, the AEDPA is unclear in a number of important respects, including the temporal reach of several provisions.[10] In resolving the ambiguity as to the temporal reach of the AEDPA habeas amendments in general, the Court stated that "[i]n

---

[9]

The issue in the Supreme Court was whether certain sections of Title I of the AEDPA would apply to cases that were pending at the time of the AEDPA's enactment. The Supreme Court held that they did not. *Lindh*, 117 S.Ct. at 2063. This specific holding is only tangentially relevant to our decision in this case, so we do not discuss it at length.

[10]

*See Lindh*, 117 S.Ct. at 2068 ("All we can say is that in a world of silk purses and pigs' ears, the Act is not a silk purse of the art of statutory drafting.").

6

determining whether a statute's terms would produce a retroactive effect, . . . and in determining a statute's temporal reach generally, our normal rules of construction apply." *Lindh*, 117 S.Ct. at 2063.

We have interpreted *Lindh* as articulating a generally-applicable "analysis governing the temporal reach of newly enacted legislation." *Williams v. Cain*, 117 F.3d 863, 864 (5th Cir. 1997). As the Supreme Court stated in *Lindh*, and we reiterated in *Williams*, "[i]n the absence of a plain statement of the legislature's intent that a statute be applied retroactively, a court must ask whether normal rules of statutory construction suggest that a new provision applies to the case before it." *Williams*, 117 F.3d at 864 (citing *Lindh*, 117 S.Ct. at 2063-64). Thus, we apply the traditional rules of statutory construction to the provision before us in determining its temporal reach.

In applying legislatively amended periods of limitation, we have typically construed them as "govern[ing] the secondary conduct of filing suit, not the primary conduct of the [parties]."[11] As a

---

11

*St. Louis v. Texas Worker's Compensation Commission*, 65 F.3d 43, 46 (5th Cir. 1995). Similarly, it is often said that statutes of limitation go to matters of remedy rather than to fundamental rights. *See, e.g., Chase Securities Corp. v. Donaldson*, 65 S.Ct. 1137, 1142 (1945) ("This Court, . . . adopted as a working hypothesis, as a matter of constitutional law, the view that statutes of limitation go to matters of remedy, not to destruction of fundamental rights."); Singer, *Statutes and Statutory Construction* § 41.09 (5th Ed. 1993) ("[s]tatutes of limitation are generally held to relate to remedies rather than rights") (footnote

7

consequence, we normally apply the statute of limitation that was in effect at the time of the filing of the suit. We recently took this approach in *St. Louis v. Texas Worker's Compensation Commission*, 65 F.3d 43 (5th Cir. 1995). In *St. Louis*, we considered the issue of whether application of a limitations period that was enacted prior to the filing of suit but subsequent to the conduct giving rise to the suit was appropriate and permissible. *Id.* at 45-47. We held that the shorter, amended limitations period governed and, consequently, that the action was time barred. *Id.* at 48. We reasoned that there was no inequity in applying the new limitations period because the plaintiff had specific notice of the amended period. *Id.* at 44. And although the time within which the plaintiff had to file was significantly reduced,[12] the shortened

omitted).

Consequently, the canon of statutory construction mandating a presumption against retroactivity has been said to apply with less force, or not at all, to changes in limitations periods. As stated in one text: "[S]tatutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes." 73 Am.Jur.2d *Statutes* § 354 (1974) (footnote omitted).

[12]

The claimed acts of discrimination occurred in May 1991. In November 1991, the limitations period was shortened from two years, running from the time of the discrimination, to ninety days from the time the plaintiff received notice of his right to sue from the Equal Employment Opportunity Commission. *St. Louis*, 65 F.3d at 44-45. Plaintiff received his right to sue letter in July 1992. The letter advised him he should file suit not later than ninety days after its receipt. However, he did not file his suit until May

8

period still allowed the plaintiff reasonable time within which to pursue his claim in court.[13]

Although our general rule, as stated in *St. Louis*, is to apply an amended period of limitations to all suits filed after the effective date of amendment, such application is subject to at least one restriction. This constraint was expressed by the Supreme Court in *Wilson v. Iseminger*, 22 S.Ct. 573, 575 (1902), where the Court stated:

> "It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions."

The Court went on to state that "[i]t is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action." *Id.* at 575.

---

1993.

[13]

*Id.* at 45. See also note 12, *supra*. In *St. Louis*, we also stated that "true retroactivity" was not really an issue, because the amended statue of limitations was applied only to the prospective event of plaintiff's filing suit. *Id.* at 46. We specifically declined to comment on whether the limitations period were to be applied to cases that had already been filed at the time of the amendment. *Id.* at 46 n.13. Presumably, under our precedents, this would have raised retroactivity concerns. However, we need not confront that issue with respect to the limitations period in the case at bar because the Supreme Court's holding in *Lindh* forbids application of the limitations period to cases "pending" on the AEDPA's effective date. *Lindh*, 117 S.Ct. at 2063.

9

If literally and mechanically applied, the statutory provision here in question would have precisely this prohibited effect: any prisoner whose judgment of conviction had become final more than one year prior to the enactment of the AEDPA would have been barred from seeking collateral relief as of the moment the Act was signed into law.[14] Accordingly, such a construction would run afoul of the "essential" principle requiring that a "reasonable time" be allowed before the courthouse doors are thus retroactively shut upon a claim.[15] In the absence of any indication that Congress intended the limitations period to apply in such a harsh manner,[16] we join the majority of circuits in holding that prisoners must be accorded

---

[14]

It should be noted that we are speaking in general terms. The limitations provision does contain certain exceptions to the one-year period. However, these exceptions are relatively narrow and likely would not be of any aid to the majority of potential habeas petitioners.

[15]

Although it might be argued that this principle is one of constitutional dimensions, we emphasize that we apply it here as a jurisprudential rule of statutory construction, and do not address the question of whether the provision would be constitutional if otherwise applied.

[16]

As noted above, we have been unable to discern any specific legislative intent as to the temporal application of the Act's limitations period. We agree with the Tenth Circuit that "there is no indication Congress intended to foreclose prisoners who had no prior notice of the new limitations period from bringing their § 2255 motions" immediately upon the AEDPA's enactment. *United States v. Simmonds*, 111 F.3d 737, 745 (10th Cir. 1997). We have reviewed both the statute and its legislative history and found no evidence that Congress contemplated the immediate application of this provision to prisoners without giving them a "reasonable post-amendment time to get litigation underway." *Lindh*, 96 F.3d at 866.

a reasonable time after the AEDPA's effective date within which to file petitions for collateral relief under section 2255.[17]

We next turn to the question of what constitutes a "reasonable time" in this context. The majority of circuits that have addressed this question have adopted the bright-line rule that one year, running from the effective date of the AEDPA, constitutes a reasonable time. The Second Circuit, in contrast, has adopted an *ad hoc* approach to determining whether a particular petitioner filed within a reasonable time.[18] In determining what amount of time should be deemed "reasonable" under the law of this Circuit, we apply—in the particular circumstance of the AEDPA's one-year limitation period—a rule of statutory construction that has been proposed for the resolution of such an issue. One of the earliest discussions of this rule is found in the case of *Culbreth v. Downing*, 28 S.E. 294 (N.C. 1897), where the court determined that

---

[17]

*See, e.g., United States v. Simmonds*, 111 F.3d 737, 745-46 (10th Cir. 1997); *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir. 1996), *rev'd on other grounds*, 117 S.Ct. 2059 (1997); *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1287 (9th Cir. 1997); *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir. 1997).

[18]

*See Peterson v. Demskie*, 107 F.3d 92 (2d Cir. 1997), where the court stated that "[i]n circumstances like Peterson's, where a state prisoner has had several years to contemplate bringing a federal habeas corpus petition, we see no need to accord a full year after the effective date of the AEDPA." *Id.* at 93. The court went on to say that "[a]t the same time, we do not think that the alternative of a 'reasonable time' should be applied with undue rigor." *Id.*

an amended statute of limitations did not provide claimants a reasonable time within which to protect their rights, and consequently was faced with the same question that we must now resolve. In *Culbreth*, the court reasoned that an *ad hoc* approach was not appropriate, stating that:

> "This rule leaves open the question in each case, what is a reasonable time? And that is objectionable because it is attended with uncertainty in the minds of litigants and the profession. We therefore hold that a reasonable time shall be the balance of the time unexpired according to the law as it stood when the amending act is passed, provided that it shall never exceed the time allowed by the new statute." *Id.* at 296.

We find that, as applied to the AEDPA's one-year limitation period, this rule appropriately seeks to protect the reliance interests of affected parties without contravening the legislative intent underlying the statute.

This Court applied a similar approach in *Hanner v. Mississippi*, 833 F.2d 55 (5th Cir. 1987). There, we faced a situation analogous to that presented in the present case. The Supreme Court in *Wilson v. Garcia*, 105 S.Ct. 1938 (1985), had concluded, as a matter of statutory construction, that the most appropriate limitations period for all suits brought under 42 U.S.C. § 1983 was the general period that would be applicable to a personal injury suit in the particular state where the section 1983 case had been brought. *Id.* at 1946-48. This had the practical effect in Mississippi of drastically reducing (from six years to only one year) the applicable period of limitations for section

12

1983 claims that were in the nature of a wrongful death tort claim. *Hanner*, 833 F.2d at 58. We understood the Supreme Court precedents as mandating that the "new statute of limitations should not be mechanically applied to bar claims," but rather that "plaintiffs whose causes of action accrued before any change in the law was indicated must be afforded a reasonable time within which to bring their actions." *Id.* at 57. Thus, we were faced with reconciling the potential application of the two periods, while according plaintiffs a "reasonable time." In *Hanner*, we held that in cases where the *Wilson* decision had significantly decreased the applicable limitations period, "the appropriate limitations period shall be either (1) the longer pre-*Wilson* period, commencing at the time the action accrued, or (2) the post-*Wilson* one-year period, commencing with the date of the *Wilson* decision, whichever expires first." *Id.* at 59. We conclude that this approach is appropriate in determining the "reasonable time" to be accorded under the AEDPA.[19]

In the present context, this approach results in a very simple

---

[19]

We emphasize here, as we did in *Hanner*, that this rule will not always be the appropriate one. It is for Congress to legislate limitation periods, and great deference is shown to their authority in this area when their intent is clear or when the result of applying the new limitations period is not manifestly unjust. *See Hanner*, 833 F.2d at 58 & n.6. Here, as in *Hanner*, "the one-year period's comparative ease of administration, consistency, and predictability becomes decisive in its favor over a 'reasonable time' approach." *Id.* at 58 n.6.

outcome. Because there was no set time limit for seeking post-conviction relief before the AEDPA was enacted, the one-year AEDPA limitations period will always be the shorter of the two potentially applicable periods. Consequently, application of this approach results in the holding that petitioners attacking convictions or sentences which became final prior to the AEDPA's effective date will be accorded the one-year post-AEDPA period, commencing on the Act's effective date, within which to file for section 2255 relief. We thus join the Seventh, Ninth, and Tenth Circuits in holding that one year, commencing on April 24, 1996, presumptively constitutes a reasonable time for those prisoners whose convictions had become final prior to the enactment of the AEDPA to file for relief under 28 U.S.C. § 2255.[20] Because Flores filed his motion on August 19, 1996, his motion is timely, and we proceed to discuss its merits.

In his extensive motion and supplementary pleadings, Flores

---

[20] At this time we note, but do not address, a problem that has been recognized by several other courts. The language of section 105 of the AEDPA states that the one-year limitations period shall run from "the date on which the judgment of conviction becomes final." 110 Stat. 1220. It is unclear whether this date should be construed as the date that judgment issues from the highest court to hear the case, or whether it should be interpreted as the expiration of the time for seeking any further review. *See United States v. Calderon*, 128 F.3d 1283, 1286 n.2 (9th Cir. 1997). As the case before us does not require resolution of this question, we leave it for another day. We also note here that our holding in this case in no way affects the power of district courts to dismiss petitions for collateral relief on the basis of unreasonable and prejudicial delay under Rule 9(a).

14

makes numerous and varied assertions of error. In light of Flores' *pro se* status, we have construed his claims generously, and find that his pleadings are fairly summarized as alleging that he received ineffective assistance of counsel, that "outrageous government conduct" prejudiced his trial, that the prosecution failed to divulge evidence as required by *Brady v. Maryland*, 83 S.Ct. 1194 (1963),[21] that the trial court judge made improper remarks to the jury,[22] and that the jury charge in his trial was unconstitutional.

With respect to his claim of ineffective assistance of counsel, Flores fails to make particularized allegations or to identify probative evidence in the record tending to support his allegations. Having reviewed the record, we find no evidence tending to support Flores' claim, and accordingly find it to be fatally conclusory and without merit. Flores bases his Jenks Act and *Brady* claims primarily on the failure of the government to reveal that one of their witnesses was possibly subject to

---

[21]

Flores also claims that the failure to provide exculpatory information that gives rise to his *Brady* claim also violated the Jenks Act. 18 U.S.C. § 3500. We find no support in the record or in Flores' motion for the claim that the government improperly withheld evidence and therefore do not treat the Jenks Act claim separately.

[22]

Flores also claims that the district judge should have recused himself due to bias. Flores, however, points to no substantial evidence supporting this claim, and upon review of the entire record, this Court is unable to find any.

15

deportation due to a prior criminal conviction, asserting that this information could have been used to impeach the witness. Flores, however, has failed to point to anything indicating that this information was in the possession of the prosecution. In addition, it appears that the information Flores complains was suppressed by the government was at least partially developed during cross-examination. Finally, with respect to his claims of "outrageous government conduct," improper remarks made by the judge, and unconstitutional jury instructions, we have reviewed the record for evidence supporting these allegations, and find none.

In sum, upon reviewing the entire record, we find, as did the court below, that to the extent that Flores' allegations state cognizable grounds for relief, his claims are conclusory and wholly unsupported by any probative evidence or affidavits in the record.[23]

---

[23]

Moreover, most of Flores' claims are procedurally barred and there has been no showing of cause for the procedural default or that manifest injustice would result from the bar.

We note that in the Certificate of Appealability, we granted appeal both on the statute of limitations issue resolved above, as well as on the issue of whether the district court sufficiently stated its findings of fact and conclusions of law in granting summary judgment. After having reviewed the record, and in particular Flores' several motions and the government's responses, we conclude that it is clear from the record that the district court did not err in granting the government's motion for summary judgment. Although, as we have stated repeatedly, in denying section 2255 motions, district courts should state the findings and conclusions upon which their rulings are based, *see United States v. Daly*, 823 F.2d 871, 872 (5th Cir. 1987), in this case Flores' motion did not raise any legal or factual issues that should long have detained a district court. However, we do note that in most cases district courts should give specific reasons for their rulings on such motions because explanation of their rulings is

16

For the foregoing reasons, we hold that Flores has not presented to this Court any basis upon which we could conclude that the district court erred in granting the government's motion for summary judgment. Accordingly, the judgment of the district court is

AFFIRMED.

---

always helpful, and occasionally indispensable, to appellate review. *Id.* In the case at bar, the district court's rather terse opinion suffices to allow adequate appellate review, and a remand for a fuller explanation would be pointless.