Charles OKEEZIE, Petitioner,

v.

Michael **CHERTOFF**, Secretary of Homeland Security; Alberto Gonzalez, U.S. Attorney General; John Clark, Assistant Secretary for ICE; Robert E. Jolicoeur, El Paso Field Office Director of U.S. Immigration and Customs Enforcement; Alfredo Campos, Officer in Charge of El Paso Service Processing Center, Respondents.

No. EP–05–CA–432–DB.

United States District Court,
W.D. Texas,
El Paso Division.

May 4, 2006.

Kathleen M. Gillespie, Law Offices Of Jeffrey B. Rubin, P.C., Boston, MA, for Petitioner.

Jose J. Tavarez, Special Assistant U.S. Attorney, Magdalena G. Jara, Assistant U.S. Attorney, David Henry Burke, U.S. Department of Homeland Security, El Paso, TX, for Respondents.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Respondent Michael Chertoff's "Motion To Dismiss Petition," filed in the above-captioned cause on November 28, 2005. On December 27, 2005, Petitioner Charles Enyinnaya F. Okeezie filed his "Revised *[sic]* Response To Respondents Motion To Dismiss For Lack Of Jurisdiction" ("Response"). After due consideration, the Court is of the opinion that Respondent's Motion should be denied and that this Court retains jurisdiction over Petitioner's writ of habeas corpus.

## BACKGROUND

This is an immigration habeas corpus action with unique circumstances centered around the affect of the REAL ID Act, Pub.L. No. 109–13, Div. B, § 106(a)(1), 119 Stat. 231, 310–11 (2005). The underlying facts are undisputed. On December 24, 1974, Petitioner entered the United States at the age of six with his family, who were fleeing the persecution of ethnic Ibos, following the Biafra civil war in Nigeria. Petitioner became a lawful permanent resident of the United States on July 31, 1979. On May 1, 1992, Petitioner was convicted of controlled substances offenses in the United States District Court for the Eastern District of Michigan. On July 30, 2004, Petitioner was served with a Notice to Appear and charged with two counts of removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). On an undisclosed date, Petitioner appeared before an Immigration Judge ("IJ") in El Paso, Texas. Petitioner applied for withholding of removal under Article 3 of the United Nations Convention Against Torture ("CAT"). Petitioner claimed that it was more likely than not that he would be tortured if returned to Nigeria. Petitioner also applied for political asylum pursuant to 8 U.S.C. § 1158, withholding of removal pursuant to 8 U.S.C. § 1251, and cancellation of removal under former 8 U.S.C. § 1 182(c).

In support of his claims, Petitioner presented evidence that he would be imprisoned and tortured upon return to Nigeria. Petitioner also provided evidence that his family had experienced past persecution due to their Igbo ethnicity and their activism in the Free Biafra movement, and had fled to the United States to avoid persecution after the Biafran War. Petitioner offered evidence demonstrating that Igbos are still subject to persecution, and that upon return to Nigeria, he would be subject to torture due to his membership in MASSOB, the Movement for the Actualization of the Sovereign State of Biafra. Petitioner submitted evidence that members of MASSOB are currently subject to arbitrary arrest and detention, and that prison conditions in Nigeria amount to torture under the CAT. Finally, Petitioner presented evidence that as a convicted drug offender being deported from the United States, he would be subject to Nigerian Decree 33 of 1990, under which Nigerians incarcerated for drug offenses abroad are sentenced to five years in prison upon return to Nigeria for "bringing the name of the country to disrepute." He presented evidence that he would also be retried for his U.S. drug offense and imprisoned in Nigeria.

On September 1, 2004, the IJ denied all relief Petitioner sought and found him removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an aggravated felon. Petitioner appealed the IJ's determination, which the Board of Immigration Appeals ("BIA") denied on February 3, 2005. On May 11, 2005, the REAL ID Act, which eliminates district court habeas corpus jurisdiction over orders of removal, was signed into law. Section 106(a)(1) of the REAL ID Act limited judicial review of orders of removal to Courts of Appeals. On June 9, 2005, Petitioner filed a petition for review of his removal order in the United States Court of Appeals for the Fifth Circuit. The Government filed a motion to dismiss with the Fifth Circuit, and argued that the Court of Appeals lacked jurisdiction over Petitioner's case because his petition for review was filed more than 30 days after the issuance of his final removal order. On November 7, 2005, the Fifth Circuit deemed Petitioner's petition untimely and granted the Government's motion to dismiss. On November 17, 2005, Petitioner filed a "Petition For Writ Of Habeas Corpus" with the Court. The instant Motion followed.

## DISCUSSION

The central issue before the Court is to determine what, if any, judicial review Petitioner should be afforded in light of the REAL ID Act's enactment. Through his Motion, Respondent argues that Petitioner's habeas petition is untimely because it was filed more than 30 days after his removal order became final. In his Response, Petitioner asks the Court to construe the REAL ID Act to preserve habeas review in his narrow set of circumstances. Petitioner argues that if the Immigration and Nationality Act ("INA"), as amended by the REAL ID Act, were construed to completely preclude him from obtaining judicial review of his re-

moval order, the statute would be unconstitutional. Petitioner cites *INS v. St. Cyr*, as requiring that some judicial review in deportation cases "is unquestionably required by the Constitution." 533 U.S. 289, 300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citation and internal quotes omitted). Petitioner asserts that Respondent's boilerplate Motion makes no attempt to show that Congress envisioned the unique situation presented by Petitioner's case. Further, Petitioner argues, Respondent's Motion provides no indication that Congress intended for the new jurisdictional rules to deny Petitioner any judicial forum to raise his legal challenges. Petitioner avers that Respondent is attempting to whipsaw him between the old and new jurisdictional rules. The Court agrees with Petitioner.

Aliens have always had access to the courts to raise both constitutional and non-constitutional legal challenges to their deportation orders. *Id.* at 300–08, 121 S.Ct. 2271. In light of this unbroken tradition, the Supreme Court concluded that the Constitution, and in particular the Suspension Clause, established a minimum level of review of final removal orders that Congress must retain. *Id.* at 300–01, 121 S.Ct. 2271. Accordingly, the Court emphasized that given the serious constitutional problems raised by a total preclusion of review, the courts must construe the INA, whenever possible, to preserve judicial review. *See id.* at 300, 121 S.Ct. 2271 ("A construction of the amendments at issue that would entirely preclude review … by any court would give rise to substantial constitutional questions"); *id.* at 314, 121 S.Ct. 2271 ("the absence of [an alternate] forum … strongly counsels against adopting a construction that would raise serious constitutional questions").

Here, Respondent casts aside *St. Cyr* and attempts to dismiss the instant Peti-

tion as if Petitioner simply neglected an applicable deadline. But the circumstances of the instant case are not that cut and dry. A closer analysis of the procedural timing reveals that it was legally impossible for Petitioner to file a petition for review of his removal order before the enactment of the REAL ID Act. Before the REAL ID Act, aliens removable on the basis of criminal convictions were barred from filing petitions for review to raise claims for relief from removal. *See* 8 U.S.C.A. § 1252(a)(2)(c) (West 2005).[1] Therefore, as a criminal alien, Petitioner's only route to raise his CAT claims was by habeas in district court pursuant to 28 U.S.C. § 2241, which, unlike a petition for review, has no deadline. *See St. Cyr*, 533 U.S. at 314, 121 S.Ct. 2271 (holding that criminal aliens barred from seeking review in the court of appeals by petition for review may obtain review in habeas). When Congress passed the REAL ID Act, it completely altered this landscape.

The REAL ID Act generally eliminated district court habeas review of final removal orders and transferred jurisdiction to the Courts of Appeals. *See* REAL ID Act, Pub.L. No. 109–13, Div. B, § 106(a)(1), 119 Stat. 231, 310–11 (2005). The REAL ID Act broadened the Courts of Appeals' jurisdiction by adding a subsection to the INA. The addition reads:

> Judicial Review of Certain Legal Claims: Nothing in subparagraph (B) or (C) [restricting review for criminal aliens], or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C.A. § 1252(a)(2)(D). The new § 1252(a)(2)(D) "removes jurisdictional bars to direct review of questions of law in final removal, deportation, and exclusion orders." *Rodriguez–Castro v. Gonzales*, 427 F.3d 316, 319 (5th Cir.2005). REAL ID Act § 106(a) amended the INA to restore review in the Courts of Appeals over legal and constitutional claims raised by criminal aliens. *See* 8 U.S.C. § 1252(a)(2)(D). As the Joint Conference Report explained:

> No alien, *not even criminal aliens*, will be deprived of judicial review of such claims. Unlike AEDPA and IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, section 106 would give *every alien one day in the court of appeals*, satisfying constitutional concerns.

H.R. REP. NO. 109–72, at 174–75 (2005) (Conf.Rep.) (emphasis added); *see also id.* at 174 ("[T]he overall effect of the proposed reforms is to give every alien a fair opportunity to obtain judicial review[.]").

Thus, Congress sought to streamline judicial review by eliminating habeas petitions in district court and providing a constitutionally adequate alternative in the Courts of Appeals. The *St. Cyr* Court found that although the Constitution "require[s]" review of deportation orders, the Suspension Clause does not mandate that the particular forum for review be an actual habeas action in district court under 28 U.S.C. § 2241. 533 U.S. at 300–4, 121 S.Ct. 2271. Rather, Congress is free to choose an alternative to habeas as long as that alternative provided a constitutionally adequate substitute for review of constitutional and non-constitutional legal claims. *See id.* at 314 n. 38, 121 S.Ct. 2271. The REAL ID Act represents Congress's attempt to provide a constitutionally adequate alternative to habeas review. *See*

---

**1.** The Court cites to the 2005 edition, as the REAL ID Act did not amend this sub-section.

H.R.REP. No. 109–72, at 175 ("[I]n *St. Cyr* itself, the Supreme Court recognized that 'Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals.' ") (quoting *St. Cyr*, 533 U.S. at 314 n. 38, 121 S.Ct. 2271).

Here, if Respondent's Motion is granted, Petitioner will never receive his day in any court. The Fifth Circuit dismissed his petition without addressing the merits of his claims, so a dismissal by this Court would result in Petitioner never having an opportunity to raise his legal challenges. Congress enacted the REAL ID Act to ensure that every alien is given at least one day in court. H.R. REP. No. 109–72, at 174–75. Congress's intent in passing the REAL ID Act was not to eliminate judicial review, but to channel petitions for review to the Courts of Appeals. *Id.* Through the REAL ID Act, Congress sought to preserve the minimum level of review the *St. Cyr* Court held is constitutionally required. H.R.REP. No. 109–72, at 175. Petitioner's unique situation is simply not covered by the REAL ID Act, where he was barred from filing a petition for review prior to REAL ID and the 30–day deadline has now expired. The Court is of the opinion that dismissal at this juncture would contravene Congress's stated intent in adopting the REAL ID Act: that all aliens, criminal and non-criminal, be permitted their day in court. *See* H.R.REP. No. 109–72, at 174–75. Viewed against this backdrop, Respondent's timeliness argument is generic and unpersuasive. More importantly, following Respondent's argument would render the INA, as amended by the REAL ID Act, unconstitutional. *See St. Cyr*, 533 U.S. at 300, 121 S.Ct. 2271 ("A construction of the amendments at issue that would entirely preclude review ... by any court would give rise to substantial constitutional questions"). Petitioner should not be retroactively deprived of any

judicial forum to raise his claims. Having determined that Congress did not intend to deny Petitioner any judicial forum, the Court turns to how the Fifth Circuit has dealt with other unforeseen jurisdictional scenarios.

The Fifth Circuit has been guided by common sense and overall congressional intent when a new statute retroactively changed a jurisdictional filing deadline. For instance, in *United States v. Flores*, 135 F.3d 1000 (5th Cir.1998), when faced with a newly imposed one-year deadline for filing certain habeas petitions that previously lacked any deadline, the Fifth Circuit rejected the government's literal reading of the statute, because the statute would amount to "an unlawful attempt to extinguish rights arbitrarily" if it were "literally and mechanically applied." *Id.* at 1004. Applied literally, the statute would have required that "any prisoner whose judgment of conviction had become final more than one year prior to the enactment of the [Anti–Terrorism and Effective Death Penalty Act ("AEDPA")] would have been barred from seeking collateral relief as of the moment the [AEDPA] was signed into law." *Id.* at 1004. The court employed common sense and construed the statute to allow habeas petitioners, whose petitions would otherwise have been barred, a "reasonable time" in which to file their petitions. *Id.* at 1004–05; *see also Fisher v. Johnson*, 174 F.3d 710, 712 (5th Cir.1999) (adopting *Flores* rule "to prevent ... apparent inequity"). The *Flores* court emphasized that there was a vast difference between prospectively shortening a deadline, on the one hand, and making it literally impossible for a litigant to comply with a deadline, on the other. 135 F.3d at 1003–04.

Similarly, in *Hartford Casualty Ins. Co. v. FDIC*, 21 F.3d 696 (5th Cir.1994), the Fifth Circuit refused to read a statute to

impose a new deadline on an unsuspecting litigant, stating that doing so would "deprive [petitioner] of a forum" to raise his claims. *Id.* at 703. The new statute in that case required that " '[a]ny request for review of a final determination by the [Federal Deposit Insurance Corporation ("FDIC")] shall be filed with the appropriate circuit court of appeals not later than 60 days after such determination is ordered.' " *Id.* at 701. As of the statute's effective date, more than 60 days had passed since the FDIC's decision, so literal application of the statute would have barred Hartford's request for review. Emphasizing that such a reading would "deprive Hartford of a forum, even though [Hartford] acted properly under law existing at the time its claims arose," the court declined to apply the deadline to the petition for review. *Id.* at 702–03.

Furthermore, the Fifth Circuit, along with other Courts of Appeals, has already identified the proper treatment of habeas cases that were pending on appeal in the circuits when the REAL ID Act took effect. *See Rosales v. Bureau of Immigration and Customs Enforcement,* 426 F.3d 733 (5th Cir.2005). For habeas cases pending in the district courts on the REAL ID Act's passage, Congress expressly provided that such cases be converted to petitions for review. *See* REAL ID Act § 106(c). But as the Fifth Circuit stated in *Rosales,* Congress simply "neglected" to address what should be done with habeas cases that were pending on appeal, rather than in the district courts. *Rosales,* 426 F.3d at 736. A literal reading of the REAL ID Act's elimination of habeas review might have required the outright dismissal of habeas cases pending in the Court of Appeals upon the REAL ID Act's passage. *See id.* (interpreting Congress's silence to keep habeas petitions on appeal alive—by converting them into petitions for review—rather than opting for dismiss-

al). Instead, the Fifth Circuit followed the Third and Ninth Circuits and utilized common sense to convert these habeas appeals into petitions for review—to ensure all aliens receive their day in court. *See id.* (citing *Bonhometre v. Gonzales,* 414 F.3d 442 (3rd Cir.2005); *Alvarez–Barajas v. Gonzales,* 418 F.3d 1050 (9th Cir.2005)); *see also Kamara v. Attorney General of the United States,* 420 F.3d 202, 210 (3rd Cir.2005) (adopting *Bonhometre* rule because "to dismiss [such] case[s] ... is inconsistent with Congress' express intent to provide aliens with one chance for judicial review in the court of appeals").

The Court follows the Fifth Circuit's lead in *Flores, Hartford,* and *Rosales,* and further relies on common sense and overall congressional intent to decide the instant case. The Court believes Congress did not intend to eliminate Petitioner's right to any judicial review. *See Rosales,* 426 F.3d at 736. Further, it agrees with the *Flores* court that there is a vast difference between prospectively shortening Petitioner's deadline and making it literally impossible for him to comply with a deadline. *See Flores,* 135 F.3d at 1003–04. As explained above, the timing of the REAL ID Act made it impossible for Petitioner to comply with the deadline to file his petition for review. Therefore, the Court finds Respondent's timeliness argument rather myopic. The Court is of the opinion that Respondent's Motion should be denied and that the REAL ID Act should be construed to preserve habeas review in Petitioner's case.

## CONCLUSION

Congress did not envision Petitioner's unique jurisdictional scenario when it passed the REAL ID Act. Nor did Congress intend the new rules to leave Petitioner with no forum in which to raise his legal claims. Respondent's Motion pro-

vides no indication that Congress intended to deny Petitioner any judicial forum. Respondent's Motion amounts to an attempt to trap Petitioner between the old jurisdictional scheme and the new one. Dismissal of the petition at this juncture would contravene Congress's stated intent in adopting the REAL ID Act: that all aliens, criminal and non-criminal, be permitted their day in court. *See* H.R.REP. No. 109–72, at 174–75. That Petitioner is allowed some form of judicial review is "unquestionably required by the Constitution." *See St. Cyr*, 533 U.S. at 300, 121 S.Ct. 2271 (citation and internal quotes omitted). Therefore, the Court construes the REAL ID Act to preserve habeas review in this case, where the jurisdictional forum and filing deadline were changed in the midst of the appeals process. The Court concludes that Respondent's Motion should be denied, and that this Court retains jurisdiction over Petitioner's Petition for a Writ of Habeas Corpus.

Accordingly, **IT IS HEREBY OR-DERED** that Respondent Michael Chertoff's "Motion To Dismiss Petition" for Writ of Habeas Corpus is **DENIED.**

**IT IS FURTHER ORDERED** that on or before **June 4, 2006,** Respondents SHOW CAUSE why the relief Petitioner seeks should not be granted.

**IT IS FURTHER ORDERED** that if Petitioner decides to file a Response, it be **FILED on or before June 14, 2006.**

**IT IS FINALLY ORDERED** that the above-captioned cause is **SET** for a **HEARING** on the merits of Petitioner's Writ Of Habeas Corpus in Courtroom 1, on the 4th Floor of the United States Courthouse, 511 E. San Antonio, El Paso, TX on **June 19, 2006 at 9 a.m.**