United States Court of Appeals,

Fifth Circuit.

No. 94-60426.

Gerald MANGUM, Petitioner-Appellant,

v.

Edward HARGETT, Superintendent, Mississippi State Penitentiary, Respondent-Appellee.

Oct. 19, 1995.

Appeal from the United States District Court for the Southern District of Mississippi.

Before JOLLY and BENAVIDES, Circuit Judges, and SHAW,[*] District Judge.

BENAVIDES, Circuit Judge.

Gerald Mangum, a Mississippi state prisoner, appeals the denial of his petition for writ of habeas corpus. 28 U.S.C. § 2254. Mangum argues that the district judge erred in failing to recuse himself because the judge was a member of the prosecution staff at the time Mangum pleaded guilty in state court and that counsel rendered ineffective assistance. We hold that because the district judge did not actually participate in the prior proceedings, 28 U.S.C. § 455 does not mandate recusal. In regard to the ineffective assistance of counsel claim, we find that Mangum has not carried his burden of showing prejudice. We therefore affirm.

I. FACTS AND PROCEDURAL HISTORY

On March 5, 1981, Mangum pleaded guilty to murder, rape, and

---

[*]Chief Judge of the Western District of Louisiana, sitting by designation.

1

burglary of an occupied dwelling in the Circuit Court of Hinds County, Mississippi, First Judicial District. Pursuant to those pleas, he was sentenced to life imprisonment for murder, 30 years (10 years suspended) sentence for the rape and a 15-year (71/2 years suspended) sentence for the burglary, with the sentences running concurrently. These sentences were to run consecutively, however, to a 10-year sentence on a previous conviction for aggravated assault obtained in the Circuit Court of Hinds County, Mississippi, Second Judicial District.[1] On July 19, 1982, Mangum filed a motion to withdraw his plea of guilty to murder, which the court denied the next day. In 1988, Mangum filed a motion to vacate judgment. Finding that the relief sought in the motion to vacate was previously denied, the state trial court dismissed the motion with prejudice. On October 4, 1989, without written opinion, the Supreme Court of Mississippi affirmed the order denying post-conviction relief. *Mangum v. State,* 553 So.2d 24 (Miss.1989).

Mangum filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in district court. Mangum asserted that his counsel rendered ineffective assistance by failing to investigate the crime and by coercing him into pleading guilty to murder rather than attempting to have the charge reduced to manslaughter.

---

[1]Initially, Mangum pleaded guilty to the aggravated assault in Circuit Court of Hinds County, Mississippi, Second Judicial District, and was sentenced to 15 years in the Mississippi Department of Corrections with 10 years suspended and 5 years to serve. After serving the initial portion of the sentence, Mangum was released. The suspended sentence was revoked when he was indicted for the above burglary charge.

On October 25, 1993, the magistrate judge entered his report and recommendation that Mangum's petition for writ of habeas corpus be denied, concluding that there was no evidence that Mangum would have refused to plead guilty and proceed to trial because of the alleged ineffective assistance of counsel. Mangum objected to the report and recommendation and also submitted a petition to amend with affidavits attached. The district court adopted the recommendation and denied Mangum's petition to amend. Mangum now appeals.

II. RECUSAL OF THE DISTRICT JUDGE

Mangum contends that, pursuant to 28 U.S.C. § 455(b)(3), Judge Wingate was disqualified from hearing his federal habeas petition in the court below. Section 455(b)(3) provides that a judge shall disqualify himself "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."

The state argues that the claim is untimely because Mangum raises it for the first time on appeal.[2] We have "not yet clearly defined the scope of our review of § 455 issues raised for the first time on appeal." *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 744 n. 31 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). This Court, however, has

_____

[2]In its brief, the state asserts that Mangum had been on notice of Judge Wingate's assignment for four years, an assertion Mangum does not deny in his reply brief.

declined to reach the merits of a § 455 recusal claim which was raised for the first time on appeal, concluding that the plaintiff had waived the objection by failing to raise it earlier. *Stephenson v. Paine Webber Jackson & Curtis, Inc.,* 839 F.2d 1095, 1096 n. 3 (5th Cir.), 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 328 (1988) (citing *Delesdernier v. Porterie,* 666 F.2d 116, 121-23 (5th Cir.), *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982)).[3]  In *United States v. York,* 888 F.2d 1050, 1055-56 (5th Cir.1989), we acknowledged the waiver found in *Stephenson, supra,* but opined that there was no need to determine "whether the same should be adopted as an inflexible rule."  We also stated that the Supreme Court had implicitly rejected the view that a motion for recusal made after trial was *per se* untimely.  *Id.* (citing *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860-64, 108 S.Ct. 2194, 2203-04, 100 L.Ed.2d 855 (1988)).

Although the above cases sometimes referred generally to § 455, they involved either subsection (a) or (b)(1) of § 455, and the instant case involves § 455(b)(3).  In *Mixon v. United States,* 620 F.2d 486, 487 (5th Cir.1980), we addressed a § 455(b)(3) claim that had not been raised in the district court.  In that case, the magistrate who presided over Mixon's 28 U.S.C. § 2255 proceedings was the same individual who, as an Assistant United States Attorney, had represented the government in earlier proceedings involving the same convictions.  We found that the magistrate was

---

[3]*See also United States v. MMR Corp,* 954 F.2d 1040, 1046 (5th Cir.1992) (§ 455 includes a timeliness requirement).

disqualified and that such disqualification rendered the § 2255 proceedings a nullity. In the instant case, as set forth below, we find that recusal was not mandated, and, thus, there was no error, plain or otherwise.

Mangum asserts that Judge Wingate "was a member of the prosecution's staff at the time that [he] pled guilty" to the offense of murder that is the subject of the habeas petition now before us. Although the state concedes that Judge Wingate was an assistant district attorney in Hinds County at that time, it asserts that Judge Wingate did not participate in Mangum's guilty plea proceedings. The state record supports that assertion, and, further, Mangum does not specifically allege that Judge Wingate (then Assistant District Attorney Wingate) was personally involved in his case. The state, citing several cases from other circuits,[4] argues that the judge was not required to recuse himself because he did not actually *participate* in the proceedings.

The language of § 455(b)(3) provides that a judge shall disqualify himself "[w]here he has served in governmental employment and in such capacity *participated* as counsel, adviser or

---

[4]*United States v. Di Pasquale,* 864 F.2d 271, 279 (3d Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) (recusal not required absent a specific showing that the judge was involved in the previous case); *Kendrick v. Carlson,* 995 F.2d 1440 (8th Cir.1993) (prosecutor with no involvement in prior case not required to disqualify himself as judge); *United States v. Gipson,* 835 F.2d 1323 (10th Cir.), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 623 (1988) (to require recusal, there must be a showing that judge actually participated as counsel in the prior proceeding).

material witness concerning the proceeding." (emphasis added).[5]

In contrast, as explained by the Tenth Circuit, the predecessor version of § 455(b)(3) provided that "[A]ny ... judge of the United States shall disqualify himself in any case in which he ... has been *of counsel.*" *United States v. Gipson,* 835 F.2d 1323, 1326 (10th Cir.1988) (brackets, ellipsis, and emphasis in opinion).[6] Accordingly, the applicable version of § 455(b)(3) mandates recusal if the judge has "participated as counsel." *Id.* "Participation connotes activity.... One cannot "participate' without doing *something.*" *Id.* (emphasis in opinion).

We find the Tenth Circuit's analysis persuasive. We therefore adopt the interpretation espoused by the Tenth Circuit. Specifically, § 455(b)(3) does not *mandate*[7] recusal unless the

_____

[5]We previously have acknowledged the interpretation of § 455(b)(3) that requires actual participation in the proceedings by the former government attorney but found it unnecessary to determine whether that interpretation was correct because, under any interpretation of that provision, the judge in that case was not disqualified. *United States v. Kelly,* 556 F.2d 257, 263 (5th Cir.1977), *cert. denied,* 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978). *Cf. Donald v. Jones,* 445 F.2d 601, 606-07 (5th Cir.), *cert. denied,* 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971) (This Court, in the context of a claim of unfair trial, has looked to the lack of participation by the former government attorney when the defendant committed the offense while the attorney was a prosecutor, but the defendant was not indicted until eight months after the judge took the bench.).

[6]*Cf. Adams v. United States,* 302 F.2d 307 (5th Cir.1962) (predecessor version of § 455) (fact that judge had been prosecuting attorney in liquor violation case did not render him disqualified as a person who had been "of counsel" pursuant to § 455 in perjury prosecution arising out of liquor case where perjury case was not commenced until he resigned as prosecuting attorney).

[7]Of course, the judge has the discretion to (and sometimes should) recuse himself even though he did not actually

former government attorney has actually participated in some fashion in the proceedings. Mangum does not allege specific participation by Judge Wingate in his guilty plea proceedings, but rather, he asserts that Judge Wingate was a member of the prosecution staff. Such a claim is not sufficient to mandate recusal. Accordingly, the district court did not commit error by failing to recuse himself, much less plain error. Mangum is not entitled to any relief on this claim.

III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Mangum asserts that his counsel was ineffective and that the district court erred in dismissing this claim without holding an evidentiary hearing. A federal habeas court need not grant an evidentiary hearing on a claim of ineffective assistance of counsel "when a petitioner fails to allege facts which, if proved, would entitle the petitioner to relief, or when the state court record supports that court's disposition of the claim." *Amos v. Scott,* 61 F.3d 333, 348 (5th Cir.1995) (footnotes omitted).

To prevail on an ineffective assistance of counsel claim, Mangum must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). In the context of a guilty plea, a defendant

---

participate during his employment as a former government attorney. In *Bradshaw v. McCotter,* 796 F.2d 100, 101 (5th Cir.1986), a state appellate judge's name appeared on the brief as a prosecuting attorney; however, the judge had not participated in the appeal as a prosecutor. Although we rejected the due process claim, we opined that the judge should have disqualified himself.

must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

In regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleads guilty upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir.1994) (internal quotation marks and citation omitted), *cert. denied,* --- U.S. ----, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995). In regard to the prejudice prong, a petitioner must prove that but for his counsel's allegedly incorrect advice, he would have insisted on going to trial. *Id.* Simply alleging prejudice will not suffice. Whether the petitioner is able to persuade us that he was prejudiced depends partly on his chances for success at trial. If the petitioner claims that counsel erred by failing to investigate or discover certain exculpatory evidence, the prejudice determination will depend upon whether the discovery of such evidence would have influenced counsel to change his advice regarding the guilty plea. *Id.* Of course, whether counsel would have changed his advice depends on his prediction whether the evidence would change the outcome of the trial. *Id.* Analogously, to show prejudice in regard to a claim that the attorney failed to raise a certain defense, the petitioner must show that the defense likely would have been successful at trial. *Id.*

Subsequent to *Strickland* and *Lockhart,* the Supreme Court has further clarified the prejudice inquiry. *Lockhart v. Fretwell,* --- U.S. ----, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Pursuant to *Fretwell,* we must also determine "whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." The Supreme Court explained that "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell,* 113 S.Ct. at 844.

Mangum contends that counsel induced him to plead guilty by advising him that if he did not so plead, he would be sentenced to life without parole as an habitual offender. He asserts "that at the time that he entered his pleas of guilty he could not have been sentenced as a habitual offender, if he went to trial, and therefore, because of the mistaken advice from counsel the plea of guilty was involuntary." Although Mangum now claims that counsel advised him that he would receive life without parole if he did not plead guilty, it is worth mentioning that, in the court below and in his state proceedings, he has claimed that counsel advised him to plead guilty to escape the death penalty. Also, he previously has claimed that counsel verbally promised him a 20-year sentence for the murder.[8]

---

[8]At the guilty plea hearing, however, the judge informed Mangum that life was the *only* permissible sentence for murder, to which Mangum replied that he understood. Further, the court inquired whether there were any "side agreements of any type," and Mangum answered "no."

In any event, Mangum's claim that he could not have been sentenced as an habitual offender is based on the fact that he had not been indicted under the habitual offender statute, Miss.Code Ann. § 99-19-81 (1977).[9]  Had Mangum not pleaded guilty to murder under the proposed plea agreement, however, there is nothing to indicate that the state could not have obtained an amended or superseding indictment for murder under the habitual offender statute.

Section 99-19-81 "requires proof that the defendant had been twice previously convicted of a felony in this state or another." *Lacy v. State,* 629 So.2d 591, 594 (Miss.1993).  Further, if "one (1) of such felonies shall have been a crime of violence[, the defendant] shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation."  Miss.Code § 99-19-83 (1977).

The record reveals that Mangum had a previous conviction for aggravated assault in cause no. 3593, Circuit Court of Hinds County, Mississippi on September 9, 1977.  The sentencing order for that conviction provides that he was sentenced to fifteen years

---

[9]Section 99-19-81 provides that:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

(ten years suspended) in the Mississippi Department of Corrections and that sentence was to run concurrently with a *different* sentence imposed in Rankin County. The record therefore indicates that Mangum had two prior convictions, one of which was a crime of violence (aggravated assault), at the time he pleaded guilty to the murder charge. Under that scenario, counsel properly advised Mangum that, if he insisted on going to trial, he could receive life imprisonment without parole if he was convicted of any of the three offenses and sentenced as an habitual offender. Miss.Code §§ 99-19-81 & 99-19-83. Because the state court record supports that court's disposition of the claim, Mangum has not shown that he is entitled to a hearing to determine whether counsel's advice was erroneous. *Amos v. Scott,* 61 F.3d at 348.[10]

Mangum next argues that his counsel did not interview the witnesses to the shooting and did not prepare any defense, and, as a result, improperly advised him to plead guilty to murder rather than to manslaughter. Mangum contends that he did not murder John Edgar Simmons, but that he killed Simmons in an attempt to save his sister from being killed by Simmons.[11] To support his assertions, Mangum attached affidavits from his sisters, Ella Delois Brown and Mary Ann Brown. The affidavits provided that each of the women was present at the shooting and that Mangum's counsel did not interview them. The affidavits attest that Mangum approached Simmons to

---

[10]We note that the state transcript filed in the court below indicates that Mangum's counsel is deceased.

[11]In his state pleadings, Mangum admitted that he fired seven shots at the victim.

prevent him from beating Ella Brown to death with a piece of lumber. Simmons turned to attack Mangum, and Mangum shot him.

At the hearing in which Mangum pleaded guilty to the instant offense of murder and the other charges of rape and burglary, Mangum, upon inquiry by the trial court, explained his version of the facts underlying the murder charge,[12] which is almost identical to the version he now presents in the affidavits and his pleadings and briefs. The trial court then informed Mangum that he "may or

---

[12]The following colloquy transpired between the trial court and Mangum at the guilty plea hearing:

> Q. Just tell me what happened and let's start with the—let's start with the charge of murder first. Just tell me what happened there.
>
> A. Well, I was out—the dude, John Simmons, my brother-in-law, we was at my mom-at my mom's home and my brother-in-law, him and John had had some kind of misunderstanding and he seen—he looked out the window and he seen John, you know, in the s[t]reets ... and he went out there, you know, and him and John got into it because John had whooped one of my little nieces or nephew one and my brother-in-law went to talk to him about it and they got into it. And—and my sister, she was out there at the time. She was in the car with the kids and after all John's family come out and all of them was on my brother-in-law, then my sister, you know, she was gonna help her husband. And when she got into it, John Simmons, he had a two by four and he went—he started beating my sister with a two by four and my other sister, she come in—inside the house and tell me that Simmons had killed my sister. And when I goes outside, I seen—I see my sister laying in the s[t]reets and ... I had a gun in my hand and I tell him to stop and he—when I tell him to stop, he—he raises that two by four back at me like this (demonstrating) and I was paranoid, you know. I was paranoid at that time. He showed me that he would hit me by him beating my sister with the two by four. And I didn't have no other choice but to shoot him.

12

may not have a case of self-defense, do you understand that? Have you discussed that with your lawyer?" Mangum responded affirmatively, stating as follows: "we discussed, you know, we went over all of the decision." The court then inquired whether Mangum still desired to plead guilty. Mangum answered that he did. The court inquired further:

> Q. Do you understand that on this charge of premeditated murder that the State would have to prove that on July the 18th of 1980 that you did kill John Edgar Simmons and that it was—that you had no lawful right to kill him and that it was with malice aforethought, that he was a human being and *that it was not in necessary self-defense.* Do you understand that?
>
> A. Yes, sir.
>
> Q. That the State would have to prove all of that. Do you understand that?
>
> A. Yes, sir.

It is abundantly clear that defense counsel was aware of Mangum's version of the events and that Mangum's sisters were present at the time of the shooting. We are hard pressed to believe that, under the circumstances presented, *i.e.,* the favorable, negotiated plea and the potential consequences of proceeding to trial on these three felony charges, any further investigation by counsel would have revealed evidence that would have changed his advice regarding the guilty plea. Assuming *arguendo* that counsel did not sufficiently investigate the case and that such conduct constituted deficient performance,[13] Mangum has

---

[13]*Cf. Bryant v. Scott,* 28 F.3d 1411, 1418 (5th Cir.1994) (counsel's failure to interview alibi witnesses made known to counsel prior to trial constituted deficient performance).

not shown a reasonable probability that, but for counsel's allegedly erroneous advice, he would have insisted on going to trial.

The record indicates that Mangum, who was not unfamiliar with the Mississippi criminal justice system, understood his situation and wanted to accept the bargain offered by the state. At the beginning of the hearing, the state had represented that *if* Mangum's pleas on all three counts were accepted by the court, it would recommend a life sentence for murder, 30-year sentence (10 years suspended) for the rape, and a 15-year sentence (71/2 years suspended) for the burglary, with the three sentences to be served concurrently, but consecutive to the sentence previously imposed for aggravated assault. The clear implication was that if Mangum did not plead to all three counts, the state would not recommend this bargain. As previously set forth, had Mangum not pleaded guilty, he apparently could have been indicted and sentenced as an habitual offender, which would have subjected him to the possible sentence of life without parole solely for a rape conviction. Miss.Code Ann. § 97-3-65. Indeed, under Mississippi law, the trial court had the discretion to impose each of the sentences consecutively. Miss.Code Ann. § 99-19-21. We also recognize that these three offenses (murder, rape, and house burglary) were separate crimes committed on different dates against separate individuals and property.[14] Moreover, Mangum does not contest his

---

[14]The dwelling that Mangum burglarized was occupied at the time of the offense.

guilt as to the rape or burglary convictions and does not contest that he killed John Simmons, only that he committed the lesser included offense of manslaughter rather than murder. If Mangum had gone to trial and was convicted of the charged offenses, he could have been sentenced such that "he would surely live out the rest of his days in prison." *Armstead,* 37 F.3d at 210.

In light of these circumstances, we conclude that Mangum has not shown that, but for counsel's alleged deficient performance, he would have rejected the plea bargain and insisted on going to trial for the charges of murder, rape, and burglary as an habitual offender. *See Armstead,* 37 F.3d at 210 (overwhelming evidence against petitioner and favorable bargain persuaded this Court that petitioner would not have rejected plea bargain). We are satisfied that Mangum has not shown the requisite appreciable prejudice or that his guilty plea proceedings were "unreliable or fundamentally unfair." *Armstead,* 37 F.3d at 207, 210 (citing *Fretwell, supra* ).

For the above stated reasons, the judgment of the district court is AFFIRMED.