IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 97-50998

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARNULFO CHAPA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(A-97-CA-304)

May 10, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Arnulfo Chapa appeals the denial of his 28 U.S.C. § 2255 motion for relief from his

conviction and sentence. He raised numerous grounds for relief which were properly rejected by

the district court. On one issue concerning alleged ineffective assistance of counsel, we conclude

that additional consideration by the district court is warranted, and accordingly reverse and

remand this cause for further proceedings.

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

BACKGROUND

In 1993 Chapa pleaded guilty to one count of conspiracy to distribute marijuana. The indictment did not allege drug quantities. Under a plea agreement the government and Chapa stipulated that "the total amount of marijuana known to the United States that could be used to compute the Defendant's base offense level under U.S.S.G. § 2D is less than 6,600 pounds," or 3000 kilograms. This stipulation was repeated at the rearraignment hearing at which Chapa pleaded guilty. At the hearing, the court advised Chapa that he faced a maximum of twenty years in prison. The court did not advise Chapa of any possible minimum sentence. After the hearing the presentence report calculated a drug quantity of 2989.5 kilograms, resulting in a base offense level of 32 under U.S.S.G. § 2D1.1. Based on this offense level and other relevant sentencing guidelines, the district court sentenced Chapa to 188 months in prison. Chapa pursued a *pro se* appeal to this court. We affirmed his conviction without opinion in 1994.

In 1997, Chapa filed the pending motion for relief under § 2255.[1] He asserted claims alleging incorrect advice from the district court and his attorney regarding sentencing. The basis of these claims is Chapa's assertion that since the quantity of marijuana involved in his case well exceeded 1000 kilograms, he faced a minimum sentence of ten years and a maximum sentence of life under 21 U.S.C. § 841(b)(1)(A). He complained that when accepting his guilty plea, the trial court advised him of no minimum sentence and a possible maximum sentence of twenty years. Chapa also complained that his counsel, Mr. Flood, failed to object to the trial court's erroneous advice regarding the maximum and minimum sentence, and failed "to ensure that the court

---

[1] We note that the motion was timely. The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") amended § 2255 to include a one-year period of limitations. However, in *United States v. Flores*, 135 F.3d 1000 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 846 (1999), we held that prisoners whose convictions had become final before the April 24, 1996, effective date of the AEDPA "must be accorded a reasonable time after the AEDPA's effective date within which to file petitions for collateral relief under § 2255." *Id*. at 1005. We determined that "one year, commencing on April 24, 1996, presumptively constitutes a reasonable time for those prisoners . . . to file for relief under 28 U.S.C. § 2255." *Id*. at 1006. Chapa filed his motion on April 22, 1997, within the one-year window *Flores* established.

correctly advise[d] him of the statutory maximum and minimum limits of punishment." He further complained that his counsel, like the district court, incorrectly advised him that the maximum sentence he faced was twenty years, and failed to advise him of any minimum sentence. In an affidavit in support of his § 2255 motion he stated:

> I told Mr. Flood that my potential sentence was my preeminent concern. Mr. Flood told me that in his professional opinion as an attorney, I should get about seven (7) years and that should all of our arguments be denied such as for acceptance of responsibility, the sentence should be around ten (10) years. I was told that in the worst case, there was a twenty year maximum ("cap"). I was never informed that I faced a mandatory minimum of ten (10) years nor that I could have gotten Life. If I had known this information, I would have known that my attorney's advice to me was incorrect and I would not have accepted into the plea agreement but would have gone to trial. Mr. Flood specifically told me that I could get seven (7) years and in light of the mandatory ten year minimum, this advice was erroneous and was instrumental in me entering the plea agreement.

The magistrate judge below, in a recommendation adopted by the district court, rejected Chapa's claims without an evidentiary hearing. The court reasoned that, at the time of the guilty plea, "[t]he prevailing opinion was that quantity must be plead in the indictment to invoke the mandatory minimum and maximum," and that after the guilty plea "federal judges have changed the way they warn defendants of the possible range of punishment." The court therefore concluded that counsel's performance was not deficient in his handling of Chapa's guilty plea. It also found that "there is little reason to believe that the defendant would have gone to trial," and that per the plea agreement Chapa "knew he faced more than 1000 kilograms of marijuana in his relevant conduct." The court therefore concluded that Chapa had not demonstrated the prejudice necessary for relief on an ineffective assistance of counsel claim.

After denying relief, the district court denied Chapa a certificate of appealability (COA). However, we granted a COA, "limited to the following issue: Was counsel ineffective at the guilty plea in failing to object or otherwise correct the district court's erroneous advice regarding the statutory maximum sentence and in failing to inform Chapa of the mandatory minimum sentence?"

DISCUSSION

Under Fed. R. Crim. P. 11(c)(1), the district court is required to advise a defendant who is

3

pleading guilty of "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." In several direct appeals, we have held that the district court's failure to advise the defendant of the minimum sentence he faced is reversible error,[2] while in another direct appeal, our leading en banc decision on Rule 11 error, we concluded that such a failure was not reversible error.[3]

In *United States v. Watch*,[4] decided after Chapa pleaded guilty, we held in a direct appeal that the district court is obliged to inform a defendant who is pleading guilty of the minimum sentence he *might* face due to the drug quantities involved. In *Watch*, the defendant was indicted for possessing with intent to distribute at least fifty grams of cocaine base, a crime which carries a minimum sentence of ten years under 21 U.S.C. § 841(b)(1)(A). Later, a superseding information was filed simultaneously with a plea agreement. The information made no mention of drug quantity. At the guilty plea hearing, the district court expressed its understanding that the indictment alleged possession of more that fifty grams of cocaine base. The prosecutor explained that the original indictment contemplated a minimum ten-year sentence, but that the plea agreement "dropped [the minimum sentence] back down to where it's zero and statutory maximum of 20." After a presentence report calculated the drug quantity at 71.6 grams of cocaine base, the court sentenced the defendant to ten years in prison, as required by the statute.[5] We held that the district court reversibly erred, concluding that

> the district court was required to inform Watch of any possible statutorily required minimum sentences he *might* face as a result of application of the quantity-based Guidelines. . . . The plea colloquy cited herein indicates that Watch was informed, and apparently believed, that because the government failed to allege a specific quantity, he was subject only to a penalty range which included no minimum term

---

[2] *United States v. Still*, 102 F.3d 118, 122-23 (5th Cir. 1996); *United States v. Watch*, 7 F.3d 422, 429 (5th Cir. 1993); *United States v. Herndon*, 7 F.3d 55, 57-59 (5th Cir. 1993); *United States v. Whyte*, 3 F.3d 129, 130-31 (5th Cir. 1993).

[3] *United States v. Johnson*, 1 F.3d 296, 303-04 (5th Cir. 1993) (en banc).

[4] 7 F.3d 422 (5th Cir. 1993).

[5] *Id*. at 424-26.

4

of imprisonment. Because the district court did not inform Watch that, depending on the outcome of the pending quantity determination, he might be subject to certain statutorily required minimum sentences, the district court failed to satisfy the requirements of Rule 11(c)(1) . . . and therefore clearly erred when it found that Watch was fully advised of the consequences of his plea.[6]

The pending case, of course, is not a direct appeal. We have stressed that relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[7] In collateral proceedings, we held in one case that the failure of the trial court and defense counsel to correctly advise the defendant of the minimum sentence he faced did not entitle the defendant to habeas relief,[8] while in another case we held that a defendant was entitled to § 2255 relief where the district court overstated the maximum sentence the defendant was facing and defense counsel failed to correct the error.[9]

Under 28 U.S.C. § 2253(c)(1)(B), an appeal of a final § 2255 order cannot be taken without a COA. The COA "shall indicate which specific issue or issues" satisfy the requirement that "the applicant has made a substantial showing of the denial of a constitutional right."[10] Our review is therefore limited to the scope of our previously issued COA: "Was counsel ineffective at the guilty plea in failing to object or otherwise correct the district court's erroneous advice regarding the statutory maximum sentence and in failing to inform Chapa of the mandatory minimum sentence?" The district court's alleged failure to inform Chapa of the possible minimum and maximum sentence he faced is not before us. Our review is limited to whether Chapa can succeed on an ineffective assistance of counsel claim.

---

[6] *Id*. at 428.

[7] *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

[8] *Micheaux v. Collins*, 911 F.2d 1083, 1084 (5th Cir. 1990), *aff'd en banc*, 944 F.2d 231 (5th Cir. 1991).

[9] *United States v. Guerra*, 94 F.3d 989, 991, 994-95 (5th Cir. 1996).

[10] 28 U.S.C. § 2253(c)(2) & (c)(3).

To establish ineffective assistance of counsel, Chapa must show that counsel's performance was deficient and that the deficient performance prejudiced his defense.[11]   Under the first prong of the two-part test, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[12]  To meet the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[13]

We conclude that Chapa has stated a claim of ineffective assistance of counsel, and that the district court should conduct further proceedings to determine whether Chapa can meet the requirements for relief on such a claim.  Chapa argues that his counsel was ineffective in (1) failing to advise him of any minimum sentence he faced and misstating the maximum sentence he faced, and (2) failing to object to or correct the district court's similarly erroneous advice regarding the minimum and maximum sentence.  These claims, if established, might entitle Chapa to relief.

A.    *Deficient Performance*

We cannot accept without further proof the government's contention that at the time Chapa pleaded guilty, "the prevailing opinion was that the quantity of drugs involved in a case had to be pleaded in the indictment to invoke the mandatory minium and maximum sentences," a proposition with which the magistrate judge agreed, as discussed above.  We find no authority for this proposition, and none has been cited to us.  As we explained in *Watch*:

> Because statutory minimum sentences are incorporated in the quantity-based Guidelines, the government is prevented from avoiding application of the statutory minimum sentences prescribed in §§ 841(b)(1)(A) and (B) by simply failing to include a quantity allegation in an indictment or information in hopes of having the less severe penalty range of § 841(b)(1)(C) applied by default.  The failure to

---

[11] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[12] *Id*. at 689.

[13] *Id*. at 694.

include a quantity allegation in an indictment or information has no effect whatsoever on the determination of the appropriate sentence under the Guidelines.[14]. *Watch*, 7 F.3d at 427 (discussing U.S.S.G. § 5G1.1).[15]

It is probably true that after *Watch*, district courts became more circumspect in advising defendants pleading guilty of the range of possible sentences they face, since *Watch* held that the court was required to advise the defendant of the statutory minimum sentence he *might* face, depending on the outcome of a drug quantity determination. Prior to *Watch*, however, we believe that reasonably competent counsel should have advised their clients considering a guilty plea of the statutory minimum sentence, where imposition of such a sentence was a likely possibility, particularly where, as here, the district court did not advise the defendant of such a minimum sentence. In such circumstances, we likewise believe that reasonably competent counsel should not have advised their clients that the most likely sentence fell below the applicable statutory minimum, as Chapa alleges. In the guilty plea context, advise of counsel "need not be perfect, but it must be reasonably competent."[16] In the pending case, the imposition of the minimum ten-year sentence might have been obvious to a reasonably competent attorney. The government had only stipulated that the drug quantity was less than 3000 kilograms, three times the amount that triggers the minimum ten-year sentence under 21 U.S.C. § 841(b)(1)(A). Section 841 is the basic federal criminal drug statute. All attorneys defending criminal drug cases in the federal courts should be familiar with this statute and the minimum sentences mandated therein.

However, on this record we cannot say that counsel was deficient, and leave that determination to the district court on remand. To make such a determination, the district court must first determine what advice was actually given. While Chapa submitted an affidavit, quoted above, stating that his attorney Flood told him he faced a sentence of seven to ten years, there was

---

[14]

*Watch*, 7 F.3d at 427.

[16] *United States v. Rumery*, 698 F.2d 764, 766 (5th Cir. 1983) (quoting *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974)).

7

no evidentiary hearing below, the court did not have the benefit of Flood's testimony regarding his advice to Chapa, and Chapa submitted another affidavit that was inconsistent with the quoted affidavit.[17] Further, Chapa denied at the rearraignment hearing that "anyone made any prediction, prophesy or promise . . . as to what your sentence will be." We have held that "[a] defendant's solemn declarations in court carry a strong presumption of truth."[18]

If Flood in fact told Chapa that he faced a sentence of seven to ten years, the advice might have been deficient, but again, we cannot rule on this question as a matter of law given the state of the record. The record does not show what counsel knew or believed about the quantity of drugs the court was likely to find attributable to Chapa, based on a presentence report that had not been prepared at the time of the guilty plea. The plea agreement stipulated only that the drug quantity was less that 3000 kilograms of marijuana. The presentence report assessed the drug quantity at 2989.5 kilograms, a quantity the report described as based on a conservative analysis. Conceivably, however, Chapa's counsel might have reasonably believed that the drug quantity ultimately used for sentencing purposes would fall well below the 3000 kilograms referenced in the stipulation.

Under 21 U.S.C. § 841(b)(1)(A), a minimum sentence of ten years is mandated in cases involving 1000 kilograms or more of marijuana. The district court did not advise Chapa of this minimum sentence, as explained above. Particularly in this circumstance, counsel's performance might well have been deficient if (1) he failed to inform Chapa of the statutory minimum sentence

---

[17] Chapa's affidavit quoted above states that "Flood told me that in his professional opinion as an attorney, I should get about seven (7) years and that should all of our arguments be denied such as for acceptance of responsibility, the sentence should be around ten (10) years. I was told that in the worst case, there was a twenty year maximum 'cap')." In a later affidavit in the record, Chapa states that "Flood explained to me that in his opinion as my attorney, I would get a sentence of about 7 years to a realistic maximum of 10 years. Mr. Flood told me that even if things went badly for me, I would get no more that 12 years." Still later, Chapa filed a "notice of typographical errors," stating that the later affidavit "reads that Mr. Flood informed Petitioner that the maximum sentence should all things go badly for the petitioner was 12 years. This should read that Mr. Flood informed petitioner that the maximum sentence 'cap' under statute was 20 years and the Petitioner could in no circumstance receive more than 20 years."

[18] *Lott v. Hargett*, 80 F.3d 161, 168 (5th Cir. 1996).

8

before or during the guilty plea hearing, (2) he knew or should have known that the sentence would likely be based on a drug quantity of more that 1000 kilograms, and (3) he knew or should have known that Chapa would probably not qualify for sentencing below the statutory minimum under the safety valve provision of the Sentencing Guidelines,[19] or through a downward departure for providing substantial assistance to the government.[20]

Finally, on the question of deficient performance, the government might prevail on remand with its contention that at the time of the guilty plea, "the prevailing opinion was that the quantity of drugs involved in a case had to be pleaded in the indictment to invoke the mandatory minium and maximum sentences."  As explained above, we are skeptical of this unsupported contention, but do not foreclose the possibility that the government can muster proof of it.  Although *Watch* later rejected any notion that drug quantities must be alleged in the indictment to invoke statutory minimum and maximum sentences, Chapa's counsel should not be faulted for failing to anticipate *Watch*, if indeed the prevailing view among competent counsel at the time was contrary to our

_____

[19] Under the safety valve provision, U.S.S.G. § 5C1.2, the sentencing court can impose a sentence without regard to the statutory minimum sentence if five requirements are met.  There is no indication in the record that Chapa's counsel thought a sentence under this provision was possible, and in hindsight at least, Chapa did not come close to meeting the requirements.  The first requirement is that "the defendant does not have more than 1 criminal history point."  Chapa was assessed 6 criminal history points in the presentence report and did not object to this finding.  The fourth requirement is that "the defendant was not an organizer, leader, manager, or supervisor."  The presentence report found that Chapa was a manager or supervisor, and the district court at sentencing made the same finding over Chapa's objection.  The fifth requirement is that "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  The presentence report found that Chapa "has not provided complete information to the government concerning the totality of his involvement," and Chapa did not object to this finding.  Further, we note that the safety valve provision only frees the court to apply the Sentencing Guidelines without regard to the statutory minimum sentence.  Doing so in this case led to a sentencing range of 151 to 188 months.  Hence, we think it extremely unlikely that Chapa's counsel could have reasonably believed that Chapa would qualify for treatment under the safety valve provision or benefit from it.

[20] 18 U.S.C. § 3553(e) provides that the district court can sentence a defendant below the statutory minimum sentence upon motion of the government indicating that the defendant has provided "substantial assistance in the investigation or prosecution of another person who has committed an offense."  There is, however, no indication in the record that Chapa provided such assistance or that the government had expressed a willingness to file such a motion.

9

holding in *Watch*.[21]

B.      *Prejudice*

To prevail on his ineffective assistance of counsel claim, Chapa must also show prejudice from his counsel's deficient performance. In collateral proceedings, we have held that, to meet the prejudice requirement in the context of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[22]

Chapa attested that if he had known of the statutory minimum and maximum sentences he faced, he would not have pleaded guilty and would have gone to trial. While the district court reasoned that Chapa "knew he faced more than 1000 kilograms of marijuana in his relevant conduct," there is no indication in the record that Chapa knew that this quantity mandated a minimum ten-year sentence. Chapa might be able to make the required showing of prejudice, but we leave this determination to the district court on remand. The court may find live testimony from Chapa and Flood, or an affidavit from Flood, appropriate. The court is not required to accept Chapa's sworn assertion that he would have insisted on going to trial. In addition to Chapa's credibility, the court can consider the exact advice given by counsel, Chapa's reaction to such advice and his willingness or reluctance at the time to plead guilty, his familiarity with drug sentencing laws based on his own personal experiences,[23] the strength of the government's case

---

[21] *See Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997) ("we have noted previously that there is no general duty on the part of defense counsel to anticipate changes in the law"); *Gray v. Lucas*, 677 F.2d 1086, 1096 n.9 (5th Cir. 1982) ("Because our opinion in *Smith* was delivered three years after Gray's trial, we do not fault Gray's counsel for not anticipating our holding."); *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. Unit A Apr.1981) ("counsel is normally not expected to foresee future new developments in the law").

[22] *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994).

[23] We note that the presentence report found that Chapa had four prior convictions, including a prior marijuana conviction, that he and two others "were in the forefront of a significant marijuana trafficking conspiracy," and that Chapa "was a major marijuana distributor for the Jose Martinez drug trafficking organization."

against him,[24] the difference between the sentence predicted by counsel and the actual sentence imposed, and any other relevant evidence.

Chapa separately complains that while he faced a maximum sentence of life in prison, the district court incorrectly advised him that the maximum sentence he faced was twenty years, and his counsel was ineffective in failing to advise him of the correct maximum sentence and to correct the district court's error. In cases involving 1000 or more kilograms of marijuana, the maximum sentence is life.[25] However, Chapa was sentenced to 188 months, well below the twenty-year maximum sentence the court told him was possible. Where, as here, the sentencing court incorrectly understates the maximum sentence allowed by law, and then proceeds to impose a sentence below the maximum the court advised was possible, the court's error is harmless. We so held in *United States v. Pierce*.[26] The court erroneously advised defendant Pierce that he faced a maximum sentence of 18 years, when in fact the maximum sentence was 38 years. The sentence imposed was 6 years. We held:

> These facts present a prototypical case of harmless error. Here, the sentencing court informed Pierce during the Rule 11 colloquy that his maximum possible prison time was 18 years. Based on this understanding of a "worst case scenario," Pierce made the decision to plead guilty. And rather than having this scenario realized, Pierce was actually sentenced to six years, a sentence well below the 18 year period of which the court had made him aware. Clearly Pierce has not been harmed. Moreover, the fact that his true "worst case scenario" was actually worse than he was informed would not have reasonably caused Pierce to doubt the wisdom of his plea. To the contrary, logic and reason would weigh this factor in favor of his decision to plead guilty: If Pierce was willing to plead guilty when facing what he believed was an 18 year maximum, would he not have been just as willing if had he known that the maximum was 38 years?[27]

Just as the court's understatement of the maximum legal sentence was harmless, the alleged error of counsel in likewise misstating the maximum sentence was also harmless.

---

[24] *See Mangum*, 67 F.3d at 84 ("Whether the petitioner is able to persuade us that he was prejudiced [by counsel's incorrect advice] depends partly on his chances for success at trial.").

[25] 21 U.S.C. § 841(b)(1)(A).

[26] 5 F.3d 791 (5th Cir. 1993).

[27] *Id*. at 793-94 (footnote omitted).

11

For the foregoing reasons, we remand this cause for further proceedings consistent with this decision.

REVERSED and REMANDED.