# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major WILLIAM G. INMAN**
**United States Army, Appellant**

ARMY 20150042

Headquarters, III Corps and Fort Hood
Wade N. Faulkner, Military Judge
Colonel Ian G. Corey, Staff Judge Advocate

For Appellant: Captain Joshua G. Grubaugh, JA (argued); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Joshua G. Grubaugh, JA (on brief and reply brief).

For Appellee: Major Anne C. Hsieh, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie, III, JA; Major Anne C. Hsieh, JA (on brief); Major Cormac M. Smith, JA.

17 May 2017

------------------------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER RECONSIDERATION
------------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

In this case, we find no violation of Rule for Courts-Martial [hereinafter R.C.M.] 902(b) because Lieutenant Colonel (LTC) Faulkner did not act "as counsel" in his position as chief of military justice (CoJ) at III Corps, prior to presiding over appellant's case as the military judge, nor did he express an opinion concerning the guilt or innocence of appellant while serving as CoJ.

A panel of officers sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of conspiracy, one specification of dereliction in the performance of his duties, six specifications of making a false official statement, one specification of larceny, one specification of fraud against the United States, seven specifications of conduct unbecoming an officer, and one

specification of wrongfully communicating a threat, in violation of Articles 81, 92, 107, 121, 132, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 907, 921, 932, 933, 934 (2006 & 2012) [hereinafter UCMJ]. The panel sentenced appellant to confinement for twenty months, a $50,000 fine, and a reprimand. The military judge credited appellant with 241 days of confinement credit. The convening authority approved the sentence as adjudged and the confinement credit.

Appellant originally raised four assigned errors to this court, which we addressed in a memorandum opinion. *United States v. Inman*, ARMY 20150042, 2016 CCA LEXIS 286 (Army Ct. Crim. App. 4 May 2016) (mem. op.) (*Inman I*). We concluded two separate specifications of conspiracy should be merged. We found no merit in the matters raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). *Id.*

On 23 May 2016, appellant moved this court for reconsideration of our ruling to consolidate the two conspiracies arguing that a theft of services was not the proper object of larceny under Article 121, UCMJ. We granted appellant's motion for reconsideration and dismissed the conspiracy to steal services charge and specification and affirmed our other rulings. *United States v. Inman*, ARMY 20150042, 2016 CCA LEXIS 410 (Army Ct. Crim. App. 23 Jun. 2016) (*Inman II*).

On 29 November 2016, the Court of Appeals for the Armed Forces (CAAF) set aside our decision and remanded appellant's case for further inquiry into whether the military judge in appellant's case should have disqualified himself because he previously acted "as counsel" in appellant's case or because he expressed an opinion concerning the guilt or innocence of appellant when he served as CoJ at III Corps.

On 17 March 2017, this court ordered affidavits from the III Corps staff judge advocate (SJA), deputy staff judge advocate (DSJA), CoJs, senior trial counsel (STC), and trial counsel (TC) involved in the case. The government submitted the ordered affidavits on 10 April 2017. We held oral argument concerning the narrow issue identified by the CAAF on 2 May 2017.

## BACKGROUND

*LTC Faulkner's Role as Chief of Justice*

The offenses for which appellant was court-martialed occurred between October 2007 and December 2013. On 9 July 2010, appellant was re-assigned from Fort Sam Houston to the Warrior Transition Brigade (WTB) at Fort Hood. The WTB was a unit within the III Corps General Courts-Martial Convening Authority (GCMCA) jurisdiction.

Lieutenant Colonel Faulkner was the CoJ for III Corps and Fort Hood from July 2011 through June 2013, after which time he was assigned as a military judge at Fort Hood.

On 5 April 2013, appellant's offenses were reported to civilian authorities, and in turn, reported to the Army. That same day, appellant's brigade commander reported appellant's misconduct to the III Corps GCMCA in a Commander's Critical Information Report (CCIR) email detailing the nature of allegations and indicating a serious incident report (SIR) was being finalized. The III Corps SJA received a copy of that email. At 0425 hours, Saturday, 6 April 2013, the SJA forwarded the CCIR report to LTC Faulkner, the TC for the WTB and the DSJA. Appellant was flagged by his command on 15 April 2013.

On 22 May 2013, the Criminal Investigation Command (CID) received a report from the Killeen police department (KPD) that closed their investigation into the domestic and sexual assault allegation due to "a lack of corroboration." CID then sought a no probable cause opinion from the WTB TC to close their collateral investigation. As a result, the STC met with the TC to discuss the way ahead on appellant's case—to decide if the case should be closed and if a no probable cause opinion should be given. Upon reviewing the case, the STC noted several leads the KPD failed to develop during their investigation. Together, the STC and TC developed a list of leads for CID to follow, thus appellant's case remained open and under investigation by CID.

While the case continued to be investigated, LTC Faulkner transitioned from being the III Corps CoJ to being a military judge. Eventually the probable cause opinion came in the fall of 2013, after LTC Faulkner became a military judge. Charges were not preferred against appellant until 27 May 2014. On 8 September 2014, charges were referred.

On 22 October 2014, LTC Faulkner presided over appellant's court-martial as the military judge. Before arraignment, LTC Faulkner disclosed on the record that some of appellant's offenses occurred during the time he served as the III Corps CoJ. He stated as the CoJ for III Corps, he "supervised the prosecution of all trial counsel and all courts-marital" within the GCMCA jurisdiction. He further indicated that while he did not personally prosecute any cases, he "did oversee the supervision of those counsel that were assigned to prosecute those cases."

Notably, LTC Faulkner indicated that when he reviewed the III Corps military justice senior leader misconduct case tracker he used as the CoJ, he found appellant's name and case description on the tracker. He indicated the reason he kept the tracker was to assess potential conflicts while subsequently serving as a

military judge. Lieutenant Colonel Faulkner noted there were "special reporting requirements" for senior leader misconduct. The senior leader tracker reflected that the III Corps Commanding General had been notified of appellant's case and that CID was investigating the case. The tracker also noted appellant's wife reported appellant had sexually assaulted her and the case had been closed by the KPD due to lack of corroboration on 7 May 2013. The tracker was updated on 7 June 2013. Lastly, LTC Faulkner stated, during the court-martial, he had no recollection of the facts of appellant's case or his involvement in the case, despite appellant's name appearing on the tracker. After LTC Faulkner's disclosure, neither government counsel nor defense counsel objected or challenged LTC Faulkner presiding over appellant's case.

In an affidavit dated 2 February 2017, LTC (Ret.) Faulkner asserted he had "no role" in reporting misconduct to the Commanding General and had no recollection of giving a status update to the SJA on appellant's case. He did admit, however, he provided the SJA with the senior leader misconduct tracker each week. He also stated he was the point of contact for distribution of CID reports, which he regularly received and forwarded to appropriate trial counsel. He further indicated he would only read the CID reports of investigation (ROI) if there was "some issue with the case." He did not further expound upon what "some issue" meant.

In addition to LTC (Ret.) Faulkner's affidavit, five additional affidavits inform our decision.

*Brigadier General (BG) SR (SJA from September 2009 to September 2013)*

Brigadier General SR indicated the primary point of contact with both local law enforcement and the District and County Attorney's Office was the III Corps CoJ. The intent was to allow for one entry point for information and to speak with one voice when responding to questions from civilian entities. Brigadier General SR also indicated that the CoJ was responsible for passing information on to the STC and the TC, as well as providing information to him. Brigadier General SR stated it was his expectation that the CoJ would give guidance to the TCs on how to proceed on cases.

Brigadier General SR stated daily supervision of III Corps TCs was done by the CoJ and the STC. Brigadier General SR stated he used the senior leader misconduct tracker to brief the commanding general on the status of investigations and, if he had any questions, he would address those questions to the CoJ, and "occasionally the TC involved."

Lastly, BG SR had no recollection of discussing appellant's case with LTC Faulkner, but could not be certain such discussions did not actually take place, given the volume of cases he reviewed during his tenure as the III Corps SJA.

*Major (MAJ) KS (Former STC)*

Major KS stated LTC Faulkner would not generally get involved in cases substantively until there was an offer to plead or referral of charges.

Major KS stated that during LTC Faulkner's time as CoJ, the brigade legal teams populated and updated the senior leader misconduct tracker–the tracker was sometimes reviewed at TC meetings, but not all the time. The role of the CoJ regarding the tracker was to ensure it was up-to-date, rather than to discuss the substance.

Major KS indicated that he and the WTB TC reviewed appellant's criminal case file because CID wanted to close the case. In May 2013, once the STC and TC noted leads that had not been followed by the KPD, they requested CID conduct additional investigation. Major KS stated he was certain he did not coordinate this reassessment of appellant's case with LTC Faulkner.

*Major MN (Former Trial Counsel)*

Major MN stated he created the entry for appellant's case on the senior leader misconduct tracker. He said the tracker was reviewed during weekly meetings attended by all the trial counsel under III Corps and hosted by the CoJ. He further indicated the CoJ ensured all the data fields were completed on the senior leader misconduct tracker and that continuous updates showed case progress. He also stated that the CoJ briefed overall military justice actions to the SJA.

With regard to the KPD and CID investigations of appellant, MAJ MN corroborated MAJ KS's memory of determining further investigation was necessary by CID and getting guidance from the MAJ KS. Major MN did not recall getting guidance from the CoJ.

*Colonel EC (Former DSJA)*

Colonel EC stated that the CoJ supervised the updating and maintaining awareness of the contents senior leader misconduct tracker—but could have delegated this responsibility.

*Lieutenant Colonel DE* (*CoJ, Successor to LTC Faulkner*)

Lieutenant Colonel DE stated he had no recollection of discussing appellant's case with LTC Faulkner. He did, however, indicate that on 14 June 2013, CID emailed LTC Faulkner the report of investigation concerning appellant. Approximately one hour later, LTC Faulkner forwarded the email to then-MAJ DE, and a copy to CID with a note stating "[p] lease replace me on the distro list with MAJ [DE]."

## LAW AND DISCUSSION

Lieutenant Colonel Faulkner's time as CoJ overlapped with the time appellant's case was being investigated by Army CID. Appellant now asserts LTC Faulkner had previously acted "as counsel" in the case, and was therefore disqualified from serving as the military judge. We disagree.

*Standard of Review*

A trial judge's decision whether to recuse himself is reviewed for abuse of discretion. *United States v. Lynn*, 54 M.J. 202, 203 (C.A.A.F. 2000).[1]

*Disqualification of the Military Judge under R.C.M. 902*

It is axiomatic that "[a]n accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999)) (remaining citations omitted). R.C.M. 902 promulgates two different categories in which the military judge must recuse themselves.

First, R.C.M. 902(a) addresses the appearance of bias. Second, R.C.M. 902(b) states that when the military judge has previously taken specific actions in the case, there is actual bias. *See United States v. Quintanilla*, 56 M.J. 37, 44-45 (C.A.A.F. 2001). The two subsections work in concert. Subsection (a) is broad and potentially includes more conduct within its scope. An accused may waive any conflict in subsection (a). R.C.M. 902(e). By contrast, subsection (b) is narrower and includes specific acts that require a judge to recuse themselves. Subsection (b) states that a military judge shall not accept waiver from the parties of a disqualification enumerated in subsection (b).

Under R.C.M. 902(b), the relevant grounds are as follows:

> (2) Where the military judge has acted as counsel, investigating officer, legal officer, staff judge advocate, or convening authority as to any offense charged or in the same case generally.

> (3) Where the military judge has been or will be a witness in the same case, is the accuser, has forwarded charges in the case with a personal recommendation as to disposition,

---

[1] In this case, appellant did not question Judge Faulkner presiding over his case.

> or, except in the performance of duties as military judge in a previous trial of the same or a related case, has expressed an opinion concerning the guilt or innocence of the accused.

Our superior court has explained the disqualification analysis under R.C.M. 902 requires a two-step analysis. The first step is whether disqualification is required under the specific circumstances listed in R.C.M. 902(b). If the answer to that question is no, the second step asks whether the circumstances nonetheless warrant disqualification based upon a reasonable appearance of bias. *Quintanilla*, 56 M.J. at 45. Here, appellant waived the appearance of bias issue under R.C.M. 902(a) as permitted by R.C.M. 902(e). Thus, the specific question in this case is whether LTC Faulkner's actions during his tenure as CoJ at III Corps constituted acting "as counsel" in accordance with R.C.M. 902(b).

Counsel may move for the disqualification of a military judge, but military judges also have a continuing duty to recuse themselves if any of the bases of disqualification under R.C.M. 902(b) exist. Both parties are permitted to question the military judge and to present evidence concerning the possible grounds for disqualification prior to the judge's decision. R.C.M. 902(d)(2).

The key question before us next is whether LTC Faulkner's actions, or role in appellant's case as the former III Corps CoJ, are tantamount to acting "as counsel" within the meaning of R.C.M. 902(b).

*R.C.M. 902(b) Violation*

In *United States v. Jones*, the CAAF found federal courts have applied two different approaches to evaluating whether a judge who previously served as a U.S. Attorney may preside over a case investigated by the former judge's office during their time as the office head. 55 M.J. 317, 319 (C.A.A.F. 2001). The Ninth Circuit has applied a "vertical imputation" theory under which the knowledge and actions of subordinates are attributed to the superior, holding that judge cannot adjudicate a case that he or she as United States Attorney began. *Id.* (citing *United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir. 1994)). The Tenth Circuit, on the other hand, has interpreted the phrase "participated as counsel" as connoting *activity* by the individual and that a judge is not required to recuse himself without actual prior involvement in the case. *Id.* (citing *United States v. Gipson*, 835 F.2d 1323 (10th Cir. 1988), *cert. denied*, 486 U.S. 1044 (1988)). In that case, the court focused on Congress amending the statute from "of counsel" to "participated as counsel." *See Gipson*, 835 F.2d at 1326, *citing* 28 U.S.C. § 455(b)(3); *see also Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995)(agreeing with the analysis in *Gipson*), *cert. denied*, 516 U.S. 1133 (1996).

Appellant asks us to apply the vertical imputation theory. Under this theory, the actions of subordinates are attributed to superiors. Thus, if any subordinate acted "as counsel" in a case then the superior would be considered to have acted "as counsel." In this case, this would mean when a subordinate TC decided to keep the case open and refused to offer a "no probable cause" opinion, that action would be imputed to LTC Faulkner. This court has previously rejected the application of the vertical imputation theory, based upon similar facts. *See United States v. Pasay*, ARMY 20140930, 2017 CCA LEXIS 268 (Army Ct. Crim. App. 19 Apr. 2017). We are further informed by *Jones*, wherein a Navy Court of Criminal Appeals (CCA) judge served as the director of the appellate government division (GAD) prior to sitting as a CCA judge. 55 M.J. at 318. The CAAF held that in view of the perfunctory nature of former GAD Chief's actions (acting on extension motions), it was appropriate to apply the actual prior involvement standard to the case, rather than the vertical imputation standard. Finding no military precedent in which the vertical imputation approach has been applied, and finding appellant's case most analogous to the facts in *Jones*, we reject applying the vertical imputation theory and instead use the "actual participation" standard.

In appellant's case, LTC Faulkner stated he had no recollection of the case and does not recall giving guidance to his subordinates or advising the SJA on the case. The affidavits provided by the SJA, STC, and TC do not support a finding otherwise.[2] There are three actions by LTC Faulkner that require analysis: 1) his involvement with the senior leader misconduct tracker; 2) his receipt of an email from the III Corps SJA with the CCIR for appellant's case attached; and 3) his receipt of an email from CID with the final ROI attached and forwarding the same email to his successor while instructing CID to remove him from their email distribution chain and add his successor.

While some of appellant's offenses occurred during the time LTC Faulkner was the CoJ, and while both the KPD and the CID investigations were ongoing during his CoJ tenure, from the record before us, it does not appear Judge Faulkner was actively or affirmatively involved in appellant's case during any stage of the prosecution.

While appellant's case was placed on the III Corps senior leader misconduct case tracker by his subordinates, we find no evidence LTC Faulkner gave any guidance to his subordinates or superiors on the case. The record supports the assertion that the brigade legal teams filled out and updated the information

---

[2] LTC Faulkner's assertion that he never received an email from the SJA regarding appellant's case is inaccurate. Major MN was able to produce an April 2013 email from the SJA to LTC Faulkner, the DSJA, and MAJ MN forwarding the CCIR regarding appellant's case.

contained on the tracker and that LTC Faulkner acted merely to make sure that the information was up-to-date. Notably, the STC and TC indicated that LTC Faulkner was not involved in the decision to keep appellant's case open and follow other leads after the KPD closed their investigation.

We also find LTC Faulkner's passive receipt of the CCIR from his SJA, with his STC and TC copied, with a note from the SJA stating "FYI" does not equate to actual involvement. Lieutenant Colonel Faulkner took no actual, affirmative steps in appellant's case.

We find LTC Faulkner's act of receiving and forwarding the CID ROI to his successor also does not equate to actual prior involvement. While the evidence supports that LTC Faulkner possessed *some* knowledge regarding appellant's case, we find no evidence that LTC Faulkner *acted* affirmatively or expressed an opinion in appellant's case. The record before us contains no evidence that LTC Faulkner provided direction, advice, or guidance to subordinates or superiors about appellant's case. The actions of receiving and forwarding emails and reports as described in this case were perfunctory and non-substantive.

The probable cause opinion issued to CID on appellant's case was given months after LTC Faulkner became a military judge. The preferral of appellant's case occurred almost a year after LTC Faulkner left his position as CoJ and the referral occurred four months after that time. Accordingly, we find no violation of R.C.M. 902(b) because LTC Faulkner did not act "as counsel" in his position as CoJ at III Corps prior to presiding over appellant's case as the military judge, nor did he express an opinion concerning the guilt or innocence of appellant while serving as CoJ. While LTC Faulkner's hands-off management style as described in the affidavits is not ordinary, this court will not engage in speculation regarding how one would expect a CoJ to effectuate his responsibilities.

Appellant argues that LTC Faulkner's prior involvement in appellant's case is similar to the error found in *Williams v. Pennsylvannia*, 136 S. Ct. 1899 (2016). There*,* the United States Supreme Court found Constitutional Due Process error when a former prosecutor took an official action in the case and later became a judge reviewing the case on appeal. *Id*. at 1903. The Court held that where a judge has had an earlier significant "personal involvement as a prosecutor in a critical decision in the defendant's case, the risk of actual bias in the judicial proceeding rises to an unconstitutional level." *Id*. at 1910. In *Williams*, neither the involvement of others, nor the passage of time relieved the former DA from "the duty to withdraw in order to ensure the neutrality of the judicial process in determining the consequences that his . . . own earlier, critical decision may have set in motion." *Id*. at 1907. The Court mentioned "critical decisions" can also include deciding what charges to bring

and whether to offer a plea bargain. *Id*. The Court found the judge's participation violated the Due Process Clause of the Fourteenth Amendment stating:

> When a judge has served as an advocate for the State in the very case the court is now asked to adjudicate, a serious question arises as to whether the judge, even with the most diligent effort, could set aside any personal interest in the outcome. There is, furthermore, a risk that the judge "would be so psychologically wedded" to his or her previous position as a prosecutor that the judge "would consciously or unconsciously avoid the appearance of having erred or changed position."

*Id*. at 1906 (quoting *Withrow v. Larkin*, 421 U.S. 35, 57 (1975)).

In *Williams*, the United States Supreme Court stated that due process requires the recusal of a judge when the judge previously "made a critical decision" in the case. In that case, the "critical decision" was to authorize the government to seek the death penalty. The error was preserved by counsel in that case when they objected to the military judge sitting on the case. Here, by contrast, the evidence does not support that LTC Faulkner made any decision about this case as CoJ. Receiving and forwarding emails without direction or comment does not amount to "significant personal involvement in a critical decision," within the meaning of the holding in *Williams*. Nor does passively forwarding the senior leader misconduct case tracker to the SJA amount to a violation of the Due Process Clause of the Fourteenth Amendment.

## CONCLUSION

We find Judge Faulkner did not abuse his discretion by not recusing himself from appellant's court-martial. In addition, we incorporate and adopt our 23 June 2016 decision. *Inman II*.

Senior Judge TOZZI and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10